UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY E. DISMUKE,

    Plaintiff,

v.                                                         Case No. 04-CV-71302-DT

CENTENNIAL HEALTHCARE CORPORATION
and WHITEHALL HEALTHCARE OF NOVI,

    Defendants.
                                           /

**OPINION AND ORDER GRANTING DEFENDANTS'
"MOTION FOR SUMMARY JUDGMENT"**

Pending before the court is Defendants Centennial Healthcare Corporation's ("Centennial's") and Whitehall Healthcare of Novi's ("Whitehall's") "Motion for Summary Judgment." Defendants' motion has been fully briefed and the court has determined that no hearing is required. E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, the court will grant Defendants' motion.

**I. BACKGROUND**

In his complaint, Plaintiff Anthony E. Dismuke alleges violations of the National Labor Relations Act, discrimination based on race, age, and gender, retaliation, and intentional infliction of emotional distress on the part of his former employer Defendant Whitehall Healthcare of Novi, a long term care facility in Novi, and Centennial Healthcare Corporation, Whitehall's parent company.

Plaintiff began working as a Certified Nursing Assistant ("CNA") at Whitehall on May 3, 2001. (Pl.'s Compl. at ¶ 8; Defs.' Mot. at 2; Pl.'s Dep. at 7.) When he was hired, Plaintiff was provided with a copy of the employee handbook and other documents concerning resident rights and the resident abuse policy. (Pl.'s Dep. at 37.) He also attended in-service training programs relating to facility policies and procedures. (*Id.* at 39-40.) Plaintiff was responsible for patient care and assisted residents with their daily needs, including ambulation, hygiene, and provided necessary medical assistance. (Defs.' Mot. at 3; Pl.'s Dep. Ex. 10.) Plaintiff's responsibilities also included performing duties as directed by the charge nurse, who was Plaintiff's immediate supervisor and reported to the Assistant Director of Nursing ("ADON") and the Director of Nursing ("DON") of the facility, Lisa Chudzinski. (*Id.*; Pl.'s Dep. at 36.) The licensed administrator of the facility at the time was Melva Parks. (Chudzinski Dep. at 38.) As a part of his employment, Plaintiff received performance evaluations that, for 2002 and 2003 were above average. (Chudzinski Dep. at 34-36.) In April 2003, he also received the "Team Player Award," which is awarded for an employee's attendance, job performance, and behavior beneficial to the team. (Chudzinski Dep. at 39; Pl.'s Aff. at 4.)

Defendants assert that Plaintiff was terminated based on his "history of inappropriate abrupt behavior with residents." (Chudzinski Dep. at 42.) Incidents for which Plaintiff was reprimanded or temporarily suspended without pay include falling asleep in a resident's room (*Id.* at 60-62; Pl.'s Dep. Ex. At 11), roughly handling residents (Chudzinski Dep*.* at 68), and conducting himself in a "hurried and rough manner." (*Id.* at 44; Pl.'s Dep. at 78-80.) Plaintiff received counseling concerning the

inappropriate behaviors after they occurred. (Chudzinski Dep. at 68, 71-72.) He was also suspended without pay for two days following the incident where he fell asleep in a patient's room. (Pl's Aff. at 14.) Presented in Plaintiff's Deposition Exhibit 15 is a "Corrective Action Form" dated August 2, 2002 that warned that further violations would result in termination. (Pl.'s Dep. Ex. 15.) Plaintiff signed the bottom of this form. (Pl.'s Dep. at 81.) Plaintiff filed internal complaints in July 2001 and June 2004, alleging unfair discipline because of his race. (Pl. Aff. at 14-15.)

The incident immediately preceding Plaintiff's termination occurred on July 29, 2003. (Defs.' Mot. at 4.) On this date, a physical therapist at the facility who was attempting to assist a resident transfer from her wheelchair in the bathroom accused Plaintiff of taking away the resident's walker and banging the resident's hands to get the resident to grab the bars on the wall of the bathroom in order to accomplish the transfer. (Pl.'s Dep. at 90-91.) The resident became upset, and the therapist reported the incident. (*Id.*) Plaintiff's supervisors decided to terminate his employment. (*Id.* at 93.)[1] Plaintiff discounts the resident's allegation based on her alleged "Alzheimer's [disease], dementia, with psychosis, and paranoia." (Pl.'s Aff. at 11.)

Plaintiff alleges that Chudzinski acted unfairly to "build a paper trail" so she could fire Plaintiff. (*Id.* at 8.) He also contends that he was fired not for his performance, but because he was actively involved in bringing Whitehall into a union for the CNA's. (Pl.'s Compl. at ¶ 24.) He also claims that Ms. Chudzinski actively discouraged unionization,

---

[1] A state investigation requested by Plaintiff determined that his actions did not constitute abuse, although managers at Whitehall deemed his actions unacceptable. (Chudzinski Dep. at 55-57.)

which she admits. (Pl.'s Resp. at 4; Chudzinski Dep. at 59.) Another terminated African American employee, Armanda Pratt, testified that the housekeeping supervisor, Natalie Frever, overheard a conversation that she had with Plaintiff about the union situation, and that administrator Melva Parks "seemed to avoid" her after the incident. (Pratt Aff. at ¶¶ 6-7.) Defendants maintain that they were unaware of any connection between Plaintiff and the union. (Defs.' Mot. at 6; Chudzinski Dep. at 59.)

Plaintiff bases his discrimination charges on accusations that similarly situated white employees were treated differently than he was. He cites the incident of a male Caucasian employee, Mike Varnier, accused of rough handling of a patient who was not terminated. (Pl.'s Resp. at 8.) However, Ms. Chudzinski testified that this employee did not have a history of other incidents of resident mishandling, (Chudzinski Dep. at 47-48.) Plaintiff also alleges racial discrimination because a white female employee was caught sleeping on the job and was being rough with a resident, but was not disciplined. (Pl.'s Dep. at 103.) He also argues age discrimination because three co-workers laughed when a supervisor joked that he was "an old man" on his fortieth birthday. (*Id.* at 101.)

Plaintiff filed charges with the Equal Employment Opportunity Commission and the National Labor Relations Board, both of which dismissed his charges. (Pl.'s Dep. at 133, 143-144, 149, 150.) [2]

---

[2] In their motion, Defendants argue that Plaintiff has "failed to correctly identify his employer." (Def.'s Mot. at 10.) Defendants assert that "[d]uring the time of Plaintiff's employment at Whitehall, the Facility was managed and operated by Transitional Health Services. . . . Because Transitional Health Services was responsible for the operation and maintenance of the Facility, including all employment issues, Plaintiff was neither an employee of Centennial nor Whitehall." (*Id.*) But, the court notes that even if the

4

## II. STANDARD

Federal Rule of Civil Procedure 56, which governs summary judgment motions, provides, in part, that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and a summary judgment is to be entered if the evidence is such that a reasonable jury could find only for the moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 250. In assessing a summary judgment motion, the court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56(c); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

---

"correct" employer were named, Plaintiff's claims will still fail to survive summary judgment.

### III. DISCUSSION

### A. Race, Gender, and Age Discrimination

The *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) prima facie case factors apply to Plaintiff's discrimination claims that he filed pursuant to Title VII of the Civil Rights Act of 1964.[3]

In order to establish a prima facie case for race discrimination, Plaintiff must prove that (1) he is a member of a protected class (in this case, an African-American); (2) he suffered an adverse job action, (3) he was qualified for the position, and (4) that similarly-situated persons not in the protected class were treated differently, i.e. not subjected to the same adverse action. *See Lytle v. Malady*, 458 Mich. 153 (1998); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1166 (6th Cir. 1996).

The establishment of a prima facie case creates a rebuttable presumption of invidious discrimination and creates a burden of production for Defendant to articulate a legitimate non-discriminatory reason for taking the challenged action. Defendant's

---

[3] A plaintiff may prove disparate treatment based on race by direct or circumstantial evidence. *Lytle v. Malady,* 579 N.W.2d 906, 916 (Mich. 1998); *Anthony v. BTR Automotive Sealing Sys.*, 339 F.3d 506, 514 (6th Cir. 2003) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)). The Sixth Circuit has described direct evidence as "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (quoting *Jacklyn Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). "Direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.* (citing *Nguyen v. City of Cleveland*, 229 F.3d. 559, 563 (6th Cir. 2000)). Direct evidence of race-based discrimination usually requires an "unmistakable verbal assertion that the plaintiff was treated adversely because of his race." *Paasewe v. Ohio Arts Counsel*, 2003 WL 22017539 at *2 (Aug. 25, 2003 6th Cir.) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998)). No direct evidence of discrimination has been presented.

6

burden after a prima facie case is presented is one of only production, not persuasion; the ultimate burden of persuasion remains with Plaintiff. *Anthony v. BTR Automotive Sealing Sys.*, 339 F.3d 506, 515 (6th Cir. 2003). Once Defendant offers a legitimate non-discriminatory reason, Plaintiff bears the burden to prove that such reason is a pretext for discrimination. *Id.*

At issue in this case is the fourth prong, evidence that similarly situated individuals were treated differently in a situation fairly comparable to the one of which Plaintiff complains. "In order for two or more employees to be considered similarly-situated for the purpose of creating an inference of disparate treatment in a Title VII case, the plaintiff must prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the [other] employees who he alleges were treated more favorably." *Pierce v. Commonwealth Life Ins., Co.*, 40 F.3d 796, 802 (6th Cir. 1994). The similarity between the compared individuals must exist in all relevant aspects of their respective circumstances. *Id.*

Plaintiff's complaints arise from alleged unfair "write-ups" and termination from his position as a CNA at Defendant Whitehall. Plaintiff alleges his "discharge was also related to [his] African American status." (Pl.'s Aff. at 2.) He complains that Defendant "has a history of treating African American[s] less equal than whites." (*Id.* at 8.) Plaintiff also claims discrimination on the basis of sex and age. (Pl.'s Compl. at 3-5.)

Plaintiff compares his situation to two other white and/or female Whitehall employees who were involved in allegedly similar incidents but not punished as severely. He claims first that Mike Varnier, a white male restorative nurse's aide, who was charged with alleged rough handling of a resident for putting a brief on a resident

when she wanted a pull-up (Chudzinski Dep. at 47-50), received a two-day suspension for the incident but was not terminated and subsequently received a promotion. (Pl.'s Resp. at 8.) Defendants contend that Varnier's situation was not similar to Plaintiff's, because this was the only incident in which this type of complaint had been filed against Varnier. (Chudzinski Dep. at 49-50.)

Plaintiff next identifies Tracy Hall, a white female CNA who, says Plaintiff, was allegedly found sleeping in a resident's room and on another occasion accused of being rough with a resident. (Pl.'s Dep. at 110-112). However, Plaintiff admitted that he has no actual knowledge of whether the incident was investigated or whether Ms. Hall was disciplined. (*Id.*) Moreover, Plaintiff points to no evidence that Hall had a history or disciplinary issues. In addition, Plaintiff has offered no evidence concerning other non-protected, *similarly situated* (i.e. younger) employees who were treated differently than he was to substantiate his age discrimination charges.

In sum, Plaintiff has not demonstrated that all of the relevant aspects of his employment situation are 'nearly identical' to those of the [other] employee who he alleges was treated more favorably." *Pierce*, 40 F.3d at 802. The similarity between the compared individuals must exist in all relevant aspects of their respective circumstances. Plaintiff is African-American and was a CNA who had been reprimanded and written up for several incidents involving his treatment of residents and behavior while at work. (Def.'s Mot. at 11; Chudzinski Dep. at 47-50.) Plaintiff has produced no evidence that the other two employees had extensive disciplinary histories, and their situations are not "nearly identical" given Plaintiff's history of reprimands and complaints for mistreatment of residents. *Pierce*, 40 F.3d at 802. Because he has not

8

presented evidence of differential treatment of similarly situated individuals, Plaintiff cannot establish a prima facie case for race, sex, or age discrimination. Therefore, Defendants' motion for summary judgment is granted as to Plaintiff's race, sex, and age discrimination claims.

Even if Plaintiff had produced sufficient evidence to make a prima facie case of discrimination, Defendants have offered evidence of Plaintiff's prior disciplinary history as the reason for his termination. Under *McDonnell-Douglas*, if the employer offers a non-discriminatory reason for its action the burden returns to the plaintiff to demonstrate that the asserted legitimate reason is pretext. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). To do so, Plaintiff must show that "the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the decision; or (3) that they were insufficient to motivate the employment decision." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 184 (6th Cir. 2004). Furthermore, the Sixth Circuit has held that there must be sufficient evidence for the court to reject an employer's explanation. *Gray v. Toshiba Am. Consumer Prod.*, 263 F.3d 595 (6th Cir. 2001).

Although Plaintiff asserts that the disciplinary decisions were not correct in his case, a reasonable jury could conclude only that Defendants' reasons for taking the adverse actions were not pretextual. Plaintiff claims that his race, age, and gender were the motivating factors behind the incident reports filed against him, but he has not produced evidence to support this proposition.

### B. Retaliation

Similarly, Plaintiff has not produced evidence sufficient to meet his burden as to his retaliation charge. To establish retaliation under Title VII, Plaintiff must establish

that: (1) he engaged in protected activity; (2) Defendants knew of his protected activity; (3) thereafter Defendants took an adverse employment action against him; and (4) there was a casual connection between the protected activity and the adverse action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). If and when a plaintiff has established a prima facie case, the burden of production of evidence shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792-93 (6th Cir. 2000) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802).

  Plaintiff claims that his termination and tougher discipline occurred because of his complaints of racial discrimination. (Pl.'s Resp. at 9). He also argues that he began receiving more severe discipline soon after a manager allegedly overheard his conversation with another employee about the union. (Pratt Aff. at 1-2; Pl.'s Resp. at 9.) Plaintiff asserts that he engaged in protected activity by filing internal complaints on July 11, 2001 and June 4, 2004 alleging unfair discipline because of his race and working to bring a union to the facility. (Pl.'s Resp. at 9.) Plaintiff has presented evidence that he filed complaints with Defendants' corporate office and Defendants had notice of his protected activity. (Pl.'s Resp. at Ex. 11.) In addition, a reasonable jury could conclude that there was a causal connection between Defendants' actions and Plaintiff's protected activity. But, when the burden shifts to Defendants to "articulate some legitimate, nondiscriminatory reason" for its actions, *Morris*, 201 F.3d at 792-93, Defendants produce a July 2002 incident report indicating that termination would occur if Plaintiff was involved in another incident requiring discipline. This report, coupled with Plaintiff's history of discipline (Pl.'s Dep. Ex. 15) comprises a legitimate,

nondiscriminatory reason for Defendants' actions. As a matter of law, Plaintiff has failed to establish an issue of fact on his retaliation claim.

### C. Union Activity

Plaintiff also alleges that Defendants discriminated against him or terminated him because of his union activity. But, the court does not have jurisdiction to hear this claim. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959).

> Employee rights to self-organization are statutorily defined. Section 7 of the NLRA provides in pertinent part as follows: "[e]mployees shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." Interference with these rights is proscribed under § 8 of the Act. *See* 29 U.S.C. § 158. For example, the Act provides that "[i]t shall be an unfair labor practice for an employer--(1) to interfere with, refrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." *Id.* at § 158(a)(1). The Act further precludes an employer from discriminating "in regard to hire or tenure of employment or any term or condition of employment" to discourage union membership. *Id.* at § 158(a)(3). The Supreme Court has held that when an activity is arguably subject to these provisions, state and federal courts must defer to the exclusive jurisdiction of the National Labor Relations Board, the administrative agency authorized to enforce these provisions. *San Diego Bldg. Trades Council,* 359 U.S. at 245.

*Baldridge v. Kentucky-Ohio Transportation, Inc.*, 1996 WL 637480, at *2 (6th Cir. 1996). This principle, which is often referred to as the *Garmon* rule, "protects the primary jurisdiction of the NLRB to determine . . . what kind of conduct is either prohibited or protected by the NLRA." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 748 (1985).

As a matter of law, Defendants' motion for summary judgment as to Plaintiff's claims of violations of the NLRA will be granted.

### D. Intentional Infliction of Emotional Distress

Finally, Plaintiff's intentional infliction of emotional distress claim fails because Plaintiff has not alleged conduct severe enough to qualify under the law.[4]  Under Michigan law, a "complainant must produce evidence of 'extreme and outrageous' conduct, of the actor's injurious intent or reckless disregard for the consequences of his acts, of causation, and of the actual experience of severe distress before his case will be submitted to a jury."  *Ross v. Burns*, 612 F.2d 271, 273 (6th Cir. 1980).  In order to qualify as extreme and outrageous behavior, Defendants' conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Roberts v. Auto-Owners Ins. Co.,* 374 N.W.2d 905, 908-09 (Mich. 1985). According to state and federal courts in Michigan, termination of employment is not outrageous enough to satisfy the requirement for intentional infliction of emotional distress.  *Scuderi v. Monumental Life Ins. Co.,* 344 F. Supp. 2d 584, 606 (E.D. Mich. 2004); *Batchelor v. Sears, Roebuck and Co.*, 574 F. Supp. 1480, 1481-2 (E.D. Mich. 1983).  Furthermore, when there is a legal right to terminate employment, as in an at will employment situation, intentional infliction of emotional distress claims have not survived summary judgment.  *Ledl v. Ouik Pik Stores*, 349 N.W.2d 529, 533 (Mich. Ct. App. 1984) (finding trial court correct in granting summary judgment on an intentional infliction of emotional distress claim where defendant had legal right to terminate

---

[4] The court notes that the Michigan supreme court has not recognized as a tort the intentional infliction of emotional distress.  *Sankar v. Detroit Bd. Of Educ.*, 409 N.W.2d 213, 219 (Mich. Ct. App. 1987).

employment with or without cause). Plaintiff was an at will employee. He has not offered evidence of discriminatory behavior, and Defendants have offered legitimate reasons for his termination. Because he has not proffered evidence of extreme and outrageous behavior on the part of Defendants, his intentional infliction of emotional distress claim fails. Summary judgment is therefore appropriate as to his intentional infliction of emotional distress claim.

## IV. CONCLUSION

IT IS ORDERED that Defendants' Motion for Summary Judgment [Dkt. # 18] is GRANTED.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: July 28, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 28, 2005, by electronic and/or ordinary mail.

S/Lisa G. Teets
Case Manager and Deputy Clerk
(313) 234-5522